## Case No. 2,465.

### CARSON et al. v. MARINE INS. CO.

[2 Wash. C. C. 468.] [1]

Circuit Court, D. Pennsylvania. Jan., 1811.

MARINE INSURANCE—TOTAL LOSS—RULE OF VALUE—OPEN POLICY—VALUED POLICY.

1. In case of a total loss, the insurer loses precisely as much as the property insured was worth at the time and place of shipping it, the expenses of lading included. What the property cost the assured, is not the rule of value, in adjusting the loss; but what it was worth, or would sell for, when shipped.

2. The invoice price is not a proper test of value.

[See note at end of case.]

3. In a valued policy, both the assurers and assured agree; and therefore the assured is excused from proving, at the trial, the amount of loss.

4. The rule for fixing the value of a vessel which has been lost, and which has been insured in an open policy, is to take the sum she was worth at the time of her departure, including certain expenses.

This was an agreed case, in which the only question submitted to the court was, whether, in case of a total loss of goods insured in an open policy, the invoice price, agreeing with the first cost, shall be taken as fixing the value, or, the current market price of similar goods at the time and place of shipping them; the latter being about 25 per cent. lower than the former.

Chauncey, for plaintiffs, relied upon the following cases: 2 Marsh. 620; Parker, 104, 406; 3 Caines, 43, 47; 1 Johns. Cas. 120.

Binney and Hopkinson [for defendants] relied on the case of Snell v. Delaware Ins. Co. [Case No. 13,137], considering, that there is no difference between an insurance on ship and cargo, in this respect; and they argued upon the unreasonableness of the opposite doctrine.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. It being admitted that there is no direct authority or custom in relation to a case precisely like the present it must be decided upon an attentive consideration of the nature of the contract of insurance. What is it? An agreement by the insurer, in consideration of a certain reward, to stand in the shoes of the insured, and to indemnify him for any loss which may happen to the thing insured, from certain perils enumerated in the policy. This is effected by paying him, in money, the value of the property at risk, with the expenses incurred in putting it on board, duties, &c. Suppose the property to be destroyed within an hour after the risk has commenced—and the time makes no difference in the principle—what does the owner lose? Precisely as much as it was worth, or would have commanded in market at the time and place it was shipped, including expenses, and no more. If the property cost him less than it was worth when shipped, he loses as well the first cost as the increased value, for which he is entitled to claim an indemnity from the insurer. If it cost him more, he loses the difference between the first cost and the diminished value when the property was shipped; but for this difference, he can have no claim for indemnity under the contract, because the loss did not result from any of the perils against which an indemnity was stipulated, but from an unprofitable speculation, anterior to, and unconnected with the contract. Those who have contended for the value at the first port of discharge, have had much more reason on their side than the law of insurance, as understood in most countries, has sanctioned; for they have fairly argued, that the owner has lost, by a peril insured against all that would have been gained by a successful termination of the voyage beyond the value of the property at the port where it was shipped. But this test of value is rejected, and perhaps rightly so, for the reasons assigned in the books. But it is impossible that the first cost can ever furnish a just rule of indemnity, where it exceeds or falls short of the actual value of the property when it is put at risk.

The invoice price, which was contended for on behalf of the plaintiffs, is liable to all the objections which exist against the prime cost—and to an additional one, which in the opinion of the court, cannot be surmounted. It furnishes no rule of indemnity, in any case where it exceeds, or is less than the market value of the article; if the former, the insured is more than indemnified, by receiving more than it was worth; if the latter, which it is presumed will seldom, if ever happen, his indemnity would be in part only. But the strong ground of objection to this rule for appreciating the value of the property at risk, is, that it substantially destroys all distinction between valued and open policies, and this too in the face of one of the best established rules of evidence. It makes a private document, created by one party to the contract evidence against the other, as to a fact which it is essential for the former to prove in the ordinary way. In the case of a valued policy, the insured is relieved from the necessity of proving the amount of his loss, because both parties have agreed that the property at risk was worth so much. But, to bind the insurer by the arbitrary value fixed in the invoice, is to subject him to ex parte evidence, furnished by his opponent in the cause, without his agreement, and even without his knowledge of its contents when the contract was entered into. And as it rarely happens, if ever, that an invoice does not

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

accompany the cargo, it would follow, that all policies would in fact be valued; with this difference only, that what has hitherto been understood as valued policies, means nothing more than such as are valued by both parties, whereas open policies would be valued by one of the parties only. If neither the prime cost, nor the invoice price, can furnish a correct rule for estimating the value of the plaintiffs' indemnity, will both together answer the purpose? If they differ, neither can be admitted, if the preceding course of reasoning be right. If they agree, then the contention for a choice is merely a dispute about terms. But if either or both vary from the real value of the property insured, and consequently furnish no just rule of indemnity, then it is impossible that their agreement can furnish any. Marshall has strangely embarrassed this subject, by using as synonymous, terms which are substantially different. "In England," he observes, "the loss is estimated according to the prime cost—that is, the invoice price." If they should happen to be the same, or must always be so, it was unnecessary to multiply words, in order to inform us that either might be taken. If they differ, which they frequently may do, then the two expressions cannot mean the same thing; and he has omitted to state, in such a case, which is to govern. He is much more intelligible, when he states, that "the first price of a thing does not always afford a sure criterion to ascertain its true value, because it might have been bought very dear, or very cheap. The circumstances of time and place cause a continual variation in the price of things." Roccus is express upon the subject: "Where the contract," he observes, "is simply to pay the value of the goods in case of loss, the time of entering into the obligation is to be considered; and according to the then existing value, should the estimate be made. Thus," he adds, "the damage sustained by the assured in case of loss, is not considered a source of profit." The French rule seems to be the same; though in a valued policy, the insured is allowed to add the increased value between the prime cost and the market price. As to the rule of ascertaining the value of a ship, it is agreed on all hands, that the sum she was worth at the time of her departure, including certain expenses, is to govern; and the court can perceive no reason for establishing this rule, which does not apply to the case of goods.

Upon the whole, it is the decided opinion of the court, that judgment in this case must be rendered according to the market price of the property insured, at the time and place of exportation.

[NOTE. Mr. Justice Washington, in Snell v. Delaware Ins. Co., Case No. 13,137, instructed the jury, in substance, as follows: While the prime or invoice cost may in most cases furnish prima facie a very proper criterion of value, it is not conclusive. The actual value which may vary from the invoice or prime cost should be ascertained and determined, and, when so ascertained, will form the measure of damage which the assured is entitled to recover on an open policy.]