GEORGE WARREN & another *vs.* FRANKLIN INSURANCE COMPANY.

In estimating a loss under an open policy of marine insurance, the rule of damages is based on the market value of the goods at the inception of the risk and not on the invoice price; and evidence of the usage of a particular port is inadmissible to vary this rule.

Judgment on a contract payable in gold must be rendered for gold coin specifically, and the pound sterling is to be estimated at $4.84.

A policy of insurance provided that in case of loss all sums due to the insurers when the loss became due should be first deducted, and all sums coming due should be paid or satisfactorily secured, before payment of the loss. *Held,* that, in making up judgment in an action on the policy for the amount of a loss, the defendants could deduct the amounts of notes due to them from the insured, although they were not due at the beginning of the action; and the loss being payable in gold and the notes in currency, that the value of the notes in gold at the time they fell due should be ascertained, and such value deducted from the amount of the loss.

CONTRACT. Writ dated October 14, 1867. The declaration alleged that the defendants executed to the plaintiffs two policies of insurance, one for $850 on 84 tons of cannel coal, and the other for $5000 on 147 casks of soda ash, on board the barque Alida, at and from Liverpool to Boston, the losses payable in gold; that the vessel with her cargo was totally lost by perils insured against; that the coal was, and was agreed to be, of the value of $850 in gold, and the soda ash was, and was agreed to be, of the value of $5000 in gold; that the defendants had due notice and proof of the loss, and were bound by the terms of the policy to pay the plaintiffs the amount thereof in sixty days thereafter; that the sixty days terminated on June 4, 1867; that the defendants owed the plaintiffs said $850 in

gold and $5000 in go.d; that these sums were at said date equivalent to $1,245.25 currency and $7,325 currency, respectively; and that the defendants also owed them interest from said date. The answer admitted the making of the policy, left it to the plaintiffs to prove the loss, denied all the other allegations in the declaration, and further alleged that, if the plaintiffs should prove that the defendants owed them any sum, the defendants were entitled to deduct from said sum the amount due on two premium notes payable in currency, both falling due on January 9, 1868, and given by the plaintiffs to the defendants for other policies. The defendants also filed a declaration in set-off on the same notes.

At the trial, before *Morton*, J., it appeared that the coal was purchased by the plaintiffs November 8, 1866, and shipped by them November 17, 1866; that part of the soda ash was purchased on January 2, 1866, and shipped on November 16, 1866, and part was purchased on August 18, 1866, and shipped on November 19, 1866; that the ash rose considerably in market value at Liverpool, between the times of purchase and shipment; and that the cost price of the ash was inserted in the invoice. Both policies were open, and provided that " the premium and loss, if any, shall be payable in gold," and that " in case of loss, such loss shall be paid in sixty days after proof and adjustment, the amount of the premium note, if unpaid, without discount, and all sums due to the company from the insured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the president and directors, they discounting interest for anticipating payment."

There was no question as to the fact of the loss or the liability of the defendants, but only as to the manner in which the amount of the loss should be estimated. There was no dispute that the plaintiffs had the right to include the costs and charges of shipping the property, and the insurance premium, in the claim for loss; but the plaintiffs contended that the true measure of the loss was the market value of the property in Liverpool at the time of the shipment, with interest to the date of the loss, while the defendants contended that the invoice price was the true measure of loss.

The defendants offered to prove that by the usage in Boston in cases of an open policy, as between insurer and insured, the invoice value, and not the market value at the time and place of shipment, was treated as the basis of insurable value; but the judge excluded the evidence. Questions were raised whether payment and execution should be for gold dollars, or for the value of gold dollars estimated in currency; and whether anything for current rate of exchange should be added.

The plaintiffs denied that the defendants were entitled to set off the premium notes described in the answer and declaration in set-off, on the ground that they were not due when this action was begun.

The judge directed a general verdict for the plaintiffs, and reserved the case for the determination of the full court, — " if the exclusion of the evidence offered was erroneous the verdict to be set aside, and the case to stand for trial; otherwise the case to be sent to an assessor; in either case, under such directions as the full court shall give, as to the manner of making up and rendering judgment and issuing execution."

*J. D. Ball*, for the plaintiffs.

*C. A. Welch*, for the defendants.

CHAPMAN, C. J. The rule of damages, which may be regarded as established in the United States, is the market value of the goods with certain costs and charges at the beginning of the risk. 2 Phil. Ins. §§ 1222, 1229. *Coffin* v. *Newburyport Insurance Co.* 9 Mass. 436. *Le Roy* v. *United States Insurance Co.* 7 Johns. 343. *Carson* v. *Marine Insurance Co.* 2 Wash. C. C. 468. *Cox* v. *Insurance Co.* 3 Rich. 331. In 1 Arnould on Ins. § 131, cited by the defendants' counsel, it is said that the rule in England is the invoice price, but it is admitted that the American rule is the true rule in theory. But in the third English edition by Maclachlan, p. 291, it is stated as the English rule that " the worth of the thing insured to its owner at the outset of the risk, with the expenses of the insurance, is, in all open policies, its estimated value for the purposes of insurance." In many cases, the invoice price would be the market value, but in many other cases it would not.

This being the rule of law as to damages, the custom of a particular port could not vary it. *Dickinson* v. *Gay,* 7 Allen, 29.

The contract being payable in gold, the judgment must be rendered for gold coin specifically. *Bronson* v. *Rodes,* 7 Walace, 229. *Butler* v. *Horwitz,* Ib. 258. *Independent Insurance Co.* v. *Thomas, ante,* 192. The pound sterling is to be estimated in our coin at $4.84. *Commonwealth* v. *Haupt,* 10 Allen, 38.

It is admitted that the notes annexed to the defendants' answer, and declaration in set-off, cannot be made the subjects of a technical set-off. But each of the policies stipulates that in case of loss "all sums due to the company from the insured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of the president and directors, they discounting interest for anticipating payment," the loss shall be paid within sixty days after notice, proofs and adjustment of loss. The notes were not due when the action was commenced, but became due a few months afterwards. They are payable in currency, and, after finding their value in gold when they became due, that amount should be deducted from the plaintiffs' claim. If the parties cannot agree upon this amount, it must be ascertained by an assessor. The balance will be due to the plaintiffs with interest.

*Judgment accordingly.*