INSURANCE COMPANY OF NORTH AMERICA *vs.* FRANCIS WILLEY & another.

Suffolk.   March 8, 1912. — May 24, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Insurance,* Marine.  *Deceit.  Contract,* Implied in law.

A policy of marine insurance on wool being shipped from Liverpool, England, to Boston contained the provision that the goods insured "are valued (premium included) at as per form attached . . . ."  The form attached stated, "Valued, premium included, at $5.50 to the £ Sterling and if invoiced in American Gold at invoice and 10%."  The policy also provided, "All risks to be reported as soon as known and amounts declared as soon as ascertained."  U. S. St. of June 10, 1890, c. 407, § 3, among other things required of the shipper that he should make a declaration in writing before the United States consul that the invoice, which should be attached to that declaration, was in all respects correct and true.  The shipper's invoice was false in overstating the value of the wool. The wool was lost under circumstances which rendered the insurance company liable and it paid the shipper a sum calculated on the basis of the value stated in the invoice and afterwards, in an action against the shipper for deceit and for money had and received, sought to recover the excess of that payment over what should have been paid if the invoice had been true.  The defendant demurred.  *Held,* that the policy of insurance was in form a valued policy, but that, in order for it to take effect as such, it was necessary that the insurer should be notified of an invoice such as was required by law; that in the absence of such an invoice the policy took effect as an open policy, and that therefore the plaintiff was entitled to recover the excess of payment.

TORT OR CONTRACT for an alleged over-payment of insurance. Writ dated October 20, 1911.

The declaration as amended was in four counts, the first and third counts being in tort for deceit, and the second and fourth in contract for money had and received by the defendants to the plaintiff's use.  Essentially the same facts were alleged in all the counts, and they were as follows:

On June 27, 1908, the defendants shipped from Liverpool, England, to Boston five hundred and fifty bales of South American wool, which they had insured with the plaintiff under a policy which provided, "The said  goods and merchandises, hereby insured, are valued (premium included) at as per form attached. . . ." The form attached contained the following: "Valued, premium

included, at $5.50 to the £ Sterling and if invoiced in American Gold at invoice and 10%." Among provisions printed on the side of the policy was the following: " All risks to be reported as soon as known and amounts declared as soon as ascertained."

The shipment was under the provisions of U. S. St. of June 10, 1890, c. 407, § 3, (26 U. S. Sts. at Large, 131,) which among other things required of the defendants a declaration before the United States consul that the invoice which was attached to the declaration was in all respects correct and true.*

The invoice stated the value of the wool shipped as from eight and one quarter to fourteen and one half pence per pound. The allegation of the declaration was that the real value of the wool at Liverpool at the time of shipment was not more than seven pence per pound.

---

* The section referred to reads as follows:

"Sec. 3. That all such invoices shall, at or before the shipment of the merchandise, be produced to the consul, viceconsul, or commercial agent of the United States of the consular district in which the merchandise was manufactured or purchased as the case may be, for export to the United States, and shall have indorsed thereon, when so produced, a declaration signed by the purchaser, manufacturer, owner, or agent, setting forth that the invoice is in all respects correct and true, and was made at the place from which the merchandise is to be exported to the United States; that it contains, if the merchandise was obtained by purchase, a true and full statement of the time when, the place where, the person from whom the same was purchased, and the actual cost thereof and of all charges thereon, as provided by this act; and that no discounts, bounties, or drawbacks are contained in the invoice but such as have been actually allowed thereon; and when obtained in any other manner than by purchase, the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country from whence exported; that such actual market value is the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets, and that it is the price which the manufacturer or owner making the declaration would have received, and was willing to receive, for such merchandise sold in the ordinary course of trade, in the usual wholesale quantities, and that it includes all charges thereon as provided by this act; and the actual quantity thereof; and that no different invoice of the merchandise mentioned in the invoice so produced has been or will be furnished to any one; if the merchandise was actually purchased, the declaration shall also contain a statement that the currency in which such invoice is made out is that which was actually paid for the merchandise by the purchaser."

There was a total loss by fire of the greater part of the wool under circumstances which made the plaintiff liable to the defendants for the loss suffered. The plaintiff, relying on the truth of the statements in the invoice, paid the loss in accordance with the values there stated, and in this action sought to recover the difference between the amount thus paid and the amount it should have paid.

The defendants demurred to the "amended declaration and each count thereof" on the ground that "the matters therein contained in manner and form as set forth are not sufficient in law for the plaintiff to have its action against the defendants."

The demurrer was heard by *Jenney, J.*, who made an order overruling it and under R. L. c. 173, § 105, reported the case for determination by this court before further proceedings in the Superior Court.

*R. Homans,* (*A. G. Grant* with him,) for the plaintiff.

*A. H. Russell,* for the defendants.

RUGG, C. J. The plaintiff is a corporation doing marine insurance. The defendants are importers of wool. The plaintiff seeks to recover an alleged over-payment on a cargo of wool duly insured by it and destroyed by fire under circumstances rendering the plaintiff liable to the defendants on its contract of insurance. The pivotal question is whether the policy of insurance issued by the plaintiff to the defendants was a valued policy or an open policy. The difference between the two is this: A valued policy is one where the parties by the contract of insurance fix for the purpose of the risk a definite value of the property insured so that dispute on that subject is foreclosed for all time thereafter, except in cases of fraud or wager, no matter how high the valuation may be. *Coolidge* v. *Gloucester Marine Ins. Co.* 15 Mass. 340. *Irving* v. *Manning,* 1 H. L. Cas. 287, 307. *Marine Ins. Co. of Alexandria* v. *Hodgson,* 6 Cranch, 206, 220. *Barker* v. *Janson,* L. R. 3 C. P. 303. An open or unvalued policy is one where the value of the property insured is not settled in the policy, and in case of loss must be agreed upon or proved. *Hemmenway* v. *Eaton,* 13 Mass. 107. The contract in the case at bar provided that "The said goods and merchandises, hereby insured, are valued (premium included) at as per form attached." These words, as far as they go, tend to indicate that the parties contemplated a valued rather than an open

policy. But as no amount is stated in that immediate connection, they are indecisive. Reference is made to the form attached which contained these words: "Valued, premium included, at $5.50 to the £ Sterling and if invoiced in American Gold at invoice and 10%." The point to be decided is the fair meaning of these words. If after the word "Valued" in this clause only the rate of exchange had appeared, it would not have been a valued policy. It then would not have been a statement of value of the subject of the risk, but only a means of translating into United States money the unit of English money. To this effect is *Ogden* v. *Columbian Ins. Co.* 10 Johns. 273. While the expenses of insurance premiums are added to the true value at the place of shipment in an open policy and are not added to the stipulated value of the property in a valued policy, the use of the words "premium included" may be in explanation of the high rate of exchange for the English pound and the ten per cent added to. the American valuation. Moreover, it is not unusual to state in valued policies of marine insurance whether the stipulated value includes or excludes the premium. *Mayo* v. *Maine Fire & Marine Ins. Co.* 12 Mass. 258. But the clause to be interpreted contains something more than the mere rate of exchange, in the words "at invoice." If these words were transposed and appeared directly after the word "Valued" the sense would have been plain that the invoice price with the rate of exchange fixed for the English pound and the percentage to be added to the American dollar was the agreed value of the property at risk. While it is not expressed with clearness nor with grammatical accuracy, more of the words can be given a reasonable effect if the clause is interpreted as fixing the value at invoice plus the additions stated than to hold the meaning to be no valuation at all. There was no sufficient occasion for referring to the invoice except for fixing value. This construction receives some confirmation from the clause printed on the side of the policy which required of the insured "All risks to be reported as soon as known and the amounts declared as soon as ascertained." There seems to be no reason for a stipulation for declaration of amount of risk as soon as it is learned except for the purpose of determining valuation. These considerations incline us to the conclusion that this was a valued rather than an open policy, and that the value agreed upon was that given in the

invoice. There can be no agreement upon value, however, until the amount is actually known to both parties, the effect of which will be discussed later.

The question then arises as to the meaning of invoice value. The plaintiff alleges that the word as used in a contract of insurance to cover imports alone, as this one did, made in this Commonwealth means such an invoice as is required by U. S. St. of June 10, 1890, c. 407, (26 U. S. Sts. at Large, 131,) which governed all importations at the times of the events here in issue. That act provided in brief that no importation of merchandise exceeding $100 in value (with an exception not here material) should be made into this country, except upon an invoice and affidavit, which should show "the actual cost," if purchased, or if obtained otherwise, "the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country from which" the importation is made, verified by the oath of the owner or his agent. This act is general in its terms and applies to all importations of merchandise of every character. The use of the word "invoice" in the policy under these circumstances, in the absence of anything to show that there was any other invoice known or commonly employed in importations, must be held to refer to that required by this statute. Apparently this is not in dispute between the parties. The defendants claimed and received their payment upon presentation of a paper which purported to be such an invoice. The defendants contend, however, that the policy takes effect as a valued policy to the same extent by reference to the invoice as it would if the figures of the invoice had been written into the valuation clause. The plaintiff alleges that the reference to the invoice value meant not the figures actually written into the invoice, but such valuation as should have been written into a true and just invoice, which in its statement of value actually conformed to the terms of the federal act. The plaintiff further alleges that the defendants procured the payment to them of loss by presentation to it of an invoice showing values of wool ranging from eight and one quarter to fourteen and one half pence per pound, when in fact it was worth only seven pence per pound in the general markets of England, from which the importation was made, and that it relied upon the truth of this invoice in making the payment, and that the invoice in fact

used by the defendants in making the importation was accompanied by that form of affidavit prescribed in § 5 of the act, which purported to state a faithful valuation of the merchandise at its "actual market value or wholesale price" in the principal markets of England whence the importation was made.

A valued policy is ordinarily one where the agreed value in terms of a money standard are written into the contract of insurance. It is still a valued policy, when the agreement by parties is that the value shall be fixed and defined by reference to some other instrument. Such an agreement must be based upon some standard certain in itself or capable of being made certain, and known to and accepted by both parties. It cannot be a valued policy, which by its terms means a value fixed by agreement, when the value is determined wholly by the volition of one party to the contract, and may be invoice based on value at place of lading or on expected value at place of import, including the anticipated profit and all intervening expenses. Where the reference in the policy for the standard of value is to a legal document, which by law has a fixed, definite and unchangeable method of ascertaining value, a value found by that standard, and by that alone, must be held to have been in contemplation of the parties. There could be no value stated in an invoice for importation save market value in the country of export. It is urged by the defendants that although the invoice may not have been in compliance with the federal statute, yet the value as stated in the actual invoice, when ascertained and declared to the plaintiff, became the agreed price for the purpose of the insurance. There is force in the argument. But the stronger reason appears to support the view that invoice meant the invoice required by law, a standard known to all parties. Otherwise, the insured would be enabled to fix any value, provided only he was willing to pay the premium. But this would greatly increase the moral hazard and the actual risk without giving the insurer any real knowledge of true value or of the sense in which value was used upon which to charge premium. *Carson* v. *Marine Ins. Co.* 2 Wash. C. C. 468, 470. It would put it in the power of the insured to fix absolutely the value while the whole theory of a valued policy is that parties on an equality have come to an understanding as to value. The declaration alleges that the invoice values did not comply with the federal

statute in that they were far too high.   Hence the invoice value did not comply with the contract of insurance.   The policy was in form a valued one, but to be completed it required a declaration of value in accordance with its terms before the loss.   In substance the policy was on goods thereafter to be declared and at the agreed value, namely, that shown upon such an invoice as the federal statute required.   In order that such a policy may become effective as a valued policy, the invoice must be notified to the insurer before loss, although such notification is not a condition precedent to the right to recover on the contract of insurance.   The policy could not become a valued policy until the information as to the invoice, which of necessity must come from the insured, had been communicated to the insurer.   No such invoice price having been furnished by the insured, this policy never became operative as a valued policy.   The rights of the parties, therefore, stand on the same footing as though no statement of invoice value had been made before the loss.   In that event the policy would have been an open policy.   *Harman* v. *Kingston,* 3 Camp. 150.   *Gledstanes* v. *Royal Exchange Ins. Co.* 34 L. J. Q. B. 30.   1 Arnould on Marine Insurance, (7th ed.) § 360.   That is the basis on which the rights of the parties must be settled.   The invoice value furnished was not such an invoice as the contract required, and hence no value became known to the parties and fixed by the standard which they had adopted before it was too late to make it a valued policy.

The plaintiff's declaration sets out a cause of action to recover excess of payment of insurance above the amount which should have been paid under an open or unvalued policy of insurance.

*Demurrer overruled; defendants to answer over.*