## NEW YORK & ORIENTAL S. S. CO., Inc., v. AUTOMOBILE INS. CO.

District Court, S. D. New York. February 7. 1929.

Herman Goldman, of New York City, for plaintiff.

Bigham, Englar & Jones, of New York City (Arthur W. Clement and Henry J. Bogatko, both of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge. Plaintiff in July, 1918, was the owner of the steamship Suruga, which was then in the port of Agua Amarga, Spain, and in contemplation of a voyage to Philadelphia with a cargo of iron ore plaintiff procured from defendant the certificate of insurance sued on, covering the collectible freight. The certificate specifies the amount of the insurance as $20,187, being one-third of the value of the freight. Thereafter the vessel was loaded with 6,800 tons of iron ore and started for Philadelphia.

Soon after commencing the voyage, the Suruga stranded off the coast of Spain, and it became necessary to jettison 4,000 tons of the ore. After the making of repairs, the boat proceeded to Lisbon for the purpose of taking on additional cargo to take the place of what had been jettisoned. This new cargo was cork, and the purpose in taking it was not merely to increase the freight to be earned on the voyage, but also to make the ship safer. The boat then proceeded to New York to deliver the cork, and thereafter to Philadelphia, which was the port of original destination, to deliver the remaining part of the cargo of iron ore.

The actual amount of iron ore delivered in Philadelphia was 2,831.956 tons of the original 6,800 tons shipped. The ratio of these two figures, taken in connection with the stipulated value of the collectible rate, $60,562, shows a total loss on the freight for the original iron ore cargo of $35,340.09, of which defendant's share would be one-third, or $11,780.03, on which plaintiff claims interest of $6,243.42, bringing the total amount for which judgment is demanded up to $18,023.45. This figuring of the amount of the loss leaves out of account entirely the freight earned on the cork cargo. Plaintiff claims that no allowance should be made for this, because the additional costs and expenses of earning this additional freight were in excess of the amount earned.

■ The principal question presented is whether the action is not barred by the limitation clause in the open policy under which the certificate was issued. The usual practice in the marine insurance business was followed in this instance, and, instead of issuing a separate policy to the assured, the defendant issued through its agent the certificate in suit, which is in the usual form referring to a policy No. 100,000, which was retained by the defendant. The policy contained the usual clause limiting the time within which an action might be brought upon it to one year. The exact wording of this clause was:

"No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity unless commenced within one year from the time loss occurred."

The evidence that the open policy contained this clause is somewhat confused, because the policy was lost and secondary proof was required. Furthermore there were mistaken references to the policy as No. 100,000A, instead of No. 100,000. From all the circumstances I am satisfied that the proof offered was the best obtainable, and was not only competent, but sufficient to require a finding that the policy had such clause. The confusion and necessity for secondary evidence was largely due to plaintiff's long delay in bringing the action.

The stranding of the vessel occurred on September 29, 1918. The jettisoning of the cargo occurred within a few days thereafter, and the arrival of the vessel in Philadelphia occurred on January 3, 1919, and the discharge of her cargo was completed on January 8, 1919. This action was not commenced until January 3, 1925, about six years after the cause of action accrued.

There is no question, therefore, but that the action is barred, if the clause quoted in the policy was actually part of the contract between the parties to the certificate. No specific mention of that clause was made in the certificate. The certificate did state, however: "This is to certify that on the 16th day of July, 1918, this company insured under policy No. 100,000." Further: "This certificate represents and takes the place of the policy and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claim) as fully as if the property were covered by a special policy direct to the holder of this certificate and free from any liability for unpaid premiums."

The certificate contained various clauses, most of which did not mention the policy, but some of which did. The "warehouse to warehouse" clause stated: "Including (subject to the terms of the policy) all risks covered by this policy from shipper's or manufacturer's warehouse * * * until safely deposited in consignee's or other warehouse at destination named in the policy." Another clause on the certificate reads: "Claims to be adjusted according to the usages of Lloyds, but subject to the conditions of the policy."

The certificate does not state what dangers are insured against; it merely states that the insurance is "on collectible freight valued at $60,562, shipped on board of the steamship Suruga at and from Agua Amar-

ga via port or ports and via Lisbon for cargo to United States Atlantic port or ports direct or otherwise, and it is hereby understood and agreed that in case of loss such loss is payable (on surrender of this certificate) to the order of assured or order and when so paid liability under this certificate is discharged."

It further had typewritten on its face the clause: "Free of particular average under three per cent. Each interest separately insured or vessel be stranded, sunk, burnt, on fire, or in collision, including lighterage." It also had a printed clause: "General average and salvage charges payable according to foreign statement or per York-Antwerp Rules if in accordance with the contract of affreightment."

It thus appears that the certificate in itself was not a complete contract, and that it would be impossible by considering its terms alone to spell out a complete meeting of the minds of the parties. There is no statement in it that the collectible freight was insured against the risk of stranding, which was the cause of the loss. Recourse must be had to policy No. 100,000 in order to show that defendant's agreement was to insure against that risk. While in the "memorandum clause" above quoted stranding is specifically mentioned, upon the happening of the stranding that clause is eliminated and the general terms of the insurance prevail, and those general terms can only be found in the policy. In London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S. 149, 17 S. Ct. 785, 42 L. Ed. 113, the Supreme Court treated of the effect of a similar memorandum clause and said in part:

"Originally, the exception contained only the word 'stranding,' but subsequently and at different times the words 'burned, sunk or in collision' were added to it, and they must all be given the same construction, as an exception, that has been given to the word 'stranding,' and, *if any of them occur, the memorandum is struck out and the general words of the policy come in force.*"

Under these circumstances, I believe the policy No. 100,000 was a part of the contract between the parties, and that every clause in it must be given effect, including the time limitation. Even if the principal case relied upon by plaintiff—De Monchy et al. v. Phœnix Ins. Co., 44 Law Times Rep. 364—should be in accordance with the law of this jurisdiction, it is clearly distinguishable from the case at bar, because the certificate there contained the complete statement of the risk which resulted in the loss sued for. Moreover, one of the opinions states:

"I express no opinion as to what the position would be if the claim had been in respect of a risk not covered by the certificate but covered by the provisions of the policy, where of necessity the policy must be referred to and read in conjunction with the certificate."

In view of my determination that the action is barred by the limitation clause in the policy, it is unnecessary to discuss the other questions in detail. I believe, however, that there is another reason for denying any recovery in this case. The gross freight collected on the cork was $50,251.09, which in itself more than offset the freight lost on the jettisoned iron ore. Plaintiff claims, however, that against this item should be charged various items of loss and expense which would more than cover the entire amount of freight collected on the cork. Among the latter items is $39,927.47, being the value of the ship for 19 days, which plaintiff claims was the length of time lost in procuring the cork, discharging it at New York, and in the extra travel made necessary by it; and I do not think it was a proper deduction from the freight on the cork.

Plaintiff concedes that one of the principal reasons for taking the cork was to make the ship more seaworthy. The damage to the bottom of the vessel, the great weight of the iron ore and its location in the vessel, and also the amount of vacant space, all tended to make it important that some light cargo, such as cork, be taken on in order to make the trip back to the United States possible. The repairs to the bottom were of a temporary nature, and it was necessary to fill up the vacant space with light material, so that, if a large leak occurred, the vessel would still float. Under those circumstances, it would seem improper to charge against the additional freight the entire value of the time lost in making the ship seaworthy by taking on the cork.

Settle findings on notice.