**ST. PAUL FIRE & MARINE INS. CO. v. PURE OIL CO.**

**UNITED STATES MERCHANTS' & SHIPPERS' INS. CO. v. SAME.**

District Court, S. D. New York.

Feb. 27, 1932.

394

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (D. M. Tibbetts, of New York City, of counsel), for plaintiffs.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The plaintiffs were joint insurers of a cargo of oil owned by the defendant. Part of the cargo was lost as the result of a collision at sea on December 14, 1921. The plaintiffs in due course paid to the defendant the amount claimed by it to represent the loss. They have brought these actions at law to recover part of the sums so paid as money paid under mistake of fact. Their claim is that the oil was overvalued by the insured. By stipulation the cases were tried together before a jury of one, verdict to be directed by the court.

The facts brought out at the trial were briefly these: The defendant had taken out an open policy of insurance with each plaintiff to cover a one-half interest in its future bulk shipments of oil. As to value of the property to be insured, the policies read: "Valued, premium included, at sales price at port of destination on date of sailing." The insured was to report to the insurers each shipment to be covered. At the time of the shipment in question, such report was made to the insurers. In due course they issued certificates of insurance covering this shipment from Sinco, Tex., to Marcus Hook or Philadelphia. Under the certificate of the St. Paul Company, the Pure Oil Company was insured "under and subject to the conditions of open policy No. 24817 in the sum of $107,729 on one-half interest on 78,346.36 bbls. Mexia crude oil, valued at $215,458 ($2.75 per bbl.)." The certificate issued by the other company was to the same effect.

After the collison the insured reported the loss of 13,933.10 barrels of oil and made claim for $38,481.03 at the rate of $2.75 a barrel. The insurers .called for details They were told that there was no invoice covering the oil, as it was intended, not for sale, but for refining at Marcus Hook; that the figure of $2.75 had been arrived at by taking a value of $1.60 at the oil field and adding freight and insurance. This satisfied the insurers, and payment was made to the insured in the sum demanded, $38,481.03, each insurer paying one-half. Some years later, in the course of litigation over the collision, the insurers, enforcing the insured's rights by subrogation, found that they could not establish a higher value for the oil than $2.19 a barrel. The greater part of the difference arose from a figure of $1 as the market value at the field, as contrasted with the figure of $1.60. Thereafter these two suits were brought for $7,820.14, representing the difference between $2.75 and $2.19 a barrel for the oil lost. It is not claimed that the insured was guilty of any fraud or conscious exaggeration of the value of the cargo. It is said, however, that the money was paid under a mistake of fact. There was evidence sufficient to show that the market value of the oil at the field was no greater than $1 a barrel.

The right of the plaintiffs to recover depends upon whether the insurance upon this cargo was open or valued. In an open policy the value of the property insured is not definitely agreed upon in ad-

vance. Only a measure is laid down, such as market value. If a mutual mistake as to value is afterwards made in adjusting and paying the loss, neither party is foreclosed from complaining of the mistake later on. Relief can be had as in any other case of mutual mistake of fact. Insurance Co. of North America v. Willey, 212 Mass. 75, 98 N. E. 677. In a valued policy, however, the value of the subject matter is agreed upon beforehand at a specified sum. Dispute on that subject is then foreclosed for all time thereafter, except in case of fraud or wager. Joyce on Insurance, § 159; Williams v. Continental Insurance Co. (D. C.) 24 F. 767. See, also, Frank B. Hall & Co. v. Jefferson Insurance Co. (D. C.) 279 F. 892. It is possible therefore for the insured to recover under a valued policy more than the actual value of the subject of the insurance. At first sight this result may appear out of touch with the general principle that a contract of insurance is one of indemnity. It is supported, however, by the view that the parties may agree in advance in estimating the value of the matter insured by way of liquidated damages. Irving v. Manning, 1 H. L. Cas. 287, 307. A large overvaluation by the insured may of course furnish evidence bearing on fraud.

The original policies here were open and unvalued. No definite value is laid down in them; being blanket policies, they could not in the nature of things set forth values in specific sums. But it seems equally obvious that the certificates were valued. They provide in plain words that one-half interest in the particular cargo is insured for $107,729, the total shipment being "valued" at $215,458 or $2.75 per barrel. The mere insertion of the amount of insurance, $107,729, does not render the insurance valued (Snowden v. Guion, 101 N. Y. 458, 5 N. E. 322; Williams v. Continental Insurance Co., supra); but the addition of the valuation clause, setting forth both a value on the entire shipment and a value on each barrel, does have that effect. Policy and certificate combined make up the contract of insurance. New York & Oriental Steamship Co. v. Automobile Insurance Co. (D. C.) 32 F.(2d) 310, affirmed in (C. C. A.) 37 F. (2d) 461; Brandyce v. Globe & Rutgers Fire Insurance Co., 252 N. Y. 69, 168 N. E. 832. In any feature wherein the two are in conflict, the certificate, issued later, is deemed a modification of the blanket policy and is controlling. St. Paul Fire & Marine Insurance Co. v. Balfour (C. C. A.) 168 F. 212;

Royster Guano Co. v. Globe & Rutgers Fire Insurance Co., 252 N. Y. 75, 168 N. E. 834. It follows that the insurance on the oil was valued insurance. There being no claim of fraud, the insurers are not entitled to recover any part of the payments made to the insured on the ground of an innocent overvaluation of the oil.

A verdict will be directed for the defendant in each action.