## Ellis v. Hartford Livestock Ins. Co.

March 23, 1943.

E. B. Anderson for appellant.

Ben D. Ringo and F. M. Drake for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In February, 1937, appellee issued a policy to appellant by the terms of which it insured appellant for one year against the loss of his two year old registered race colt by death from disease. On the first page of the policy it recites, in substance, that in consideration of the payment by the assured of a premium of $125, appellee insures J. C. Ellis from February 11, 1937, to February 11, 1938, "in an amount not exceeding $2500" in the event of the loss of his race colt by death from disease. Also, at the top of the first page of the policy appears this language: "Hartford Mortality Floater Policy No. 20868 $2500.00." The policy contained a further provision known as "claiming endorsement" which reads as follows:

> "It is hereby mutually agreed and understood in the event any animal insured under the policy to which this endorsement is attached shall be entered or raced in any claiming or selling race at any time during the term of this policy where the claiming or selling price shall be less than the amount of insurance applying on such animal, then the amount of insurance applying on such animal under said policy shall thereby automatically be reduced to a sum equal only to the lowest amount for which such animal could have been claimed or sold in any such race and the assured upon demand shall be entitled to a return of the unearned premium on

the amount by which the said policy shall have been thus reduced computed on a pro rata basis from the date when such animal was so entered or raced.

"It is understood and agreed that the terms and conditions of this endorsement are substituted for those of Policy No. 20868 to which it is attached, in so far as the terms and conditions of said policy are inconsistent therewith; the terms and conditions of said policy otherwise to remain in full force and effect."

On September 30, 1937, the insured colt died of pluro-pneumonia and proof of loss was made to the company and it tendered appellant $1200 as the value of the colt, plus $44.41 rebate or refund of the premium as provided in the claiming endorsement, in full settlement of the claim. Appellant refused to accept the sum tendered, contending that by the terms of the policy he was entitled to the sum of $2500, or the value of the colt as stipulated in the first part of the policy contract, and brought this action to recover that sum. Appellee filed its answer in which it denied, among other things, that the colt at the time of its death had any value in excess of $1200, and denied that by the terms of the policy it agreed or promised to pay appellant for the loss of the colt the sum of $2500, and further alleged that it was liable to appellant for the sum of $1200, and the further sum of $44.41 as refund on the premium, as provided in the claiming endorsement.

In paragraph 2 of the answer appellee alleged that the race colt referred to in the policy had been entered or raced in two claiming or selling races, the first one at the Latonia Race Track on June 4, 1937, at a claiming price of $1250, and the second one at the Dade Park Race Track on August 9, 1937, at a claiming price of $1200. It further alleged that pursuant to the terms of the claiming endorsement the amount of insurance under the policy sued on applying to the insured colt was automatically reduced to a sum equal only to the lowest amount for which the colt had been claimed or sold in any race, and that thereby the liability of appellee under the policy was reduced to $1200. It then alleged that under the claiming endorsement appellant was entitled to a return of the pro rata unearned premium of $44.41 on the amount by which the policy was thereby reduced from the date when the colt was entered at Dade

Park in August, 1937, and pleaded the provisions of the claiming endorsement and the entering of the colt in the claiming race as a bar to any recovery against it in excess of $1244.41. In appellant's reply he denied certain affirmative allegations of the answer, among which was that any claiming endorsement was ever attached to the policy. It appears that the claiming endorsement had been detached or mutilated, but it is satisfactorily established by the proof that it was attached to the policy, which is virtually conceded in brief of appellant.

The issues were made along the lines indicated above and at the close of the evidence appellant moved the court to peremptorily instruct the jury to find a verdict in his favor in the sum of $2500, which motion the court overruled and submitted the case to the jury. Instruction No. 1 was virtually a peremptory to find for appellant the sum of $2500, unless the jury should find for appellee under instruction No. 2, or for appellant under instruction No. 4. Instruction No. 2 told the jury, in substance, that if they believed that the claiming endorsement was attached to the policy when it was delivered but had been erased, mutilated or removed therefrom, they should find for appellee. Instruction No. 4 reads:

"The Court instructs the jury, however, that if they believe from the evidence that at the time the policy of insurance sued on was delivered to the plaintiff there was attached to it a claiming endorsement limiting the recovery of plaintiff to a less amount than $2500.00, and that said claiming endorsement became detached after the delivery of said contract of insurance without the assent or procurement of the plaintiff or of any one acting for and in his behalf, then the plaintiff is entitled to recover on said policy the sum of $1200.00, if after the first of October, 1937, the jury shall believe from the evidence that the defendant continued to recognize the existence of the insurance policy in that form, then the jury should return a verdict for $1200.00 in favor of plaintiff."

The jury returned a verdict in favor of appellant for the sum of $1200. It was stipulated by the parties that appellant was entitled to the further sum of $44.41, refund on premium, as stipulated in the claiming endorsement, and judgment was entered for appellant for the

sum of $1244.41. Appellant, not being satisfied with the amount recovered, has prosecuted this appeal.

It is not denied in brief of appellant that he entered the insured colt in a claiming or selling race or races as alleged in the answer, nor is it denied that under the rule of claiming races the value of the colt was fixed at $1200 as a result of the claiming race at Dade Park on August 9, 1937. Appellant rests his case solely upon the theory that the amount of insurance was definitely fixed in the policy at $2500 and that the claiming endorsement was and is void under the valued policy law, section 701 Carroll's Kentucky Statutes, now section 298.130, KRS. Appellant cites and relies upon the case of Hartford Livestock Insurance Company v. Gibson, 256 Ky. 338, 76 S. W. (2d) 17, 18, and insists that under authority of that case the policy here in question was a valued one rather than an open one and, therefore, appellee is bound by the sum first stipulated in the face of the policy notwithstanding the claiming endorsement purports to fix a different value upon the happening of a future contingency. In the case supra the court adopted the definition of, or the difference between, a valued policy and an open one, as enunciated in Insurance Company of North America v. Willey, 212 Mass. 75, 98 N. E. 677, as follows:

" 'The difference between the two is this: A valued policy is one where the parties by the contract of insurance fix for the purpose of the risk a definite value of the property insured so that dispute on that subject is foreclosed for all time thereafter, except in cases of fraud or wager, no mattter how high the valuation may be. (Citations). An open or unvalued policy is one where the value of the property insured is not settled in the policy, and in case of loss must be agreed upon or proved.' "

In the Gibson case, supra, Gibson obtained policies insuring three horses in the sum of $1000 each, against loss resulting from death by fire. The horses were burned to death and in an action to recover on the policies the court directed a verdict in favor of Gibson in the sum of $3000, or $1000 for each horse, pursuant to the section of the statutes supra. The insurance company appealed and urged reversal of the judgment upon the ground that the policy did not attempt to estimate or state the value of the animals insured and only under-

took to insure against loss of the actual cash value which was fixed at a maximum of $1000, and hence the valued policy statute was not applicable. The clause in that policy upon which the insurance company relied, and upon which the case was determined, read as follows:

" 'This company shall not be liable, as to any animal insured hereunder, for an amount exceeding the amount for which the animal is stated to be insured in the schedule written in this policy, nor in any event exceeding its actual cash value at the time injury or disease causing loss is sustained or contracted, if its actual cash value is less than the amount for which the animal is so stated to be insured; nor shall this company be liable for the removal or disposal of the remains of any animal nor for any expense thereof.' "

It is at once obvious that the clause of the policy quoted above in the Gibson case and the claiming endorsement clause here in question are not analogous. The policy in the present case contained a clause like or similar to the one quoted above in the Gibson case, but it is not relied on by appellee as a defense. It rests its case solely upon the claiming endorsement clause. If the policy had not contained the claiming clause and were appellee relying upon the clause similar to the one quoted above, no doubt the case supra would be conclusive of this case. In the course of the opinion in the case supra it is pointed out that the premium paid strongly indicated the amount of the insurance or the value of the stock intended by the parties, but it is further said:

"There is no provision whatsoever for any reduction or refund of part of that premium should the sum paid as a loss be less than that stipulated."

In the present case there were two values fixed by the contracting parties—one for $2500, and another at a value to be fixed according to the rules established in entering horses in claiming races, if the horse was entered in a claiming race, and provisions definitely made for a refund of the proportionate part of the premium in the event the colt was entered in a claiming race with the result that its value would be fixed at a sum less than $2500. This clause was as much a part of the contract as that part referring to the $2500 value, which of course was the amount of the insurance, unless the colt

was entered in a claiming or selling race, in which event a different value obtained to be fixed according to the rules of entering horses in claiming or selling races. No such provision was contained in the policy involved in the Gibson case. We think the claiming race clause renders this case clearly distinguishable from the Gibson case.

Appellee cites and relies upon numerous authorities as support of its contention that the claiming race clause here involved is not void under the statute, supra, but that it is a binding obligation on the parties, and particularly relies upon the case of Snyder v. Travelers' Fire Insurance Co., 282 Ky. 555, 138 S. W. (2d) 1036. That case involved a fire insurance policy which is governed by section 762a-22, Carroll's Kentucky Statutes, which is a valued policy law relating to fire insurance, similar to section 701 applicable to live stock insurance. In that case the insurance company insured a farm building in the sum of $2500, the first amount mentioned in the policy, but the policy contained other provisions in the form of riders, etc., among which was one that gave permission for the bulding to remain vacant, unoccupied or uninhabited for not exceeding thirty consecutive days, and if the house burned within that period the insurance thereon was reduced one-third. After the house had been left vacant for five or six days it was destroyed by fire and the insured insisted on the payment of the sum of $2500, the value first mentioned in the policy. The insurance company contended that under the vacancy clause the amount of insurance was thereby reduced one-third. It was there contended, as here, that the rider or clause purporting to reduce the insurance below the $2500 value was void under the valued policy statute. The circuit court held that clause of the policy valid and on appeal to this court the judgment was affirmed. Appellant contends that the case supra is not here applicable since it was determined under a statute relating to fire insurance and not under the valued policy statute relating to live stock insurance. It is true that that case and the present one involved different kinds of insurance policies; namely, fire insurance and live stock insurance, but we think the same principle of law is applicable to each one. The question involved in that case, as here, was whether or not a rider or clause contained in the policy automatically reducing the

amount of insurance mentioned in the first part of the policy upon the happening of a future contingency, was valid and binding upon the contracting parties, or whether it was invalid under the applicable sections of the statutes known as valued policy laws.

The purpose of the valued policy laws is to require insurance companies to pay the amount of insurance which they agree to pay by the terms of their contracts, the amount of insurance being the controlling factor in fixing liability. Here the liability assumed by appellee under the contract in its entirety was to pay appellant $2500 in the event of the death of his colt, unless however, appellant entered the colt in a claiming or selling race in which event the liability or amount of insurance was to be the value established as the result of the colt having been entered in such race. This was a matter left entirely to the contracting parties, a right which the valued policy law does not purport to prohibit or restrict. As we have stated above, the claiming endorsement clause is a part of the contract and once the contract is read in its entirety it is as simple and understandable as if it read thus: The insurer agrees to pay the assured the sum of $2500 in the event of the death of his colt; provided however, that if the assured enters the colt in a claiming or selling race, in which event the insurer will pay the assured (in the language of the endorsement) "a sum for which the colt could have been sold in any such race." We do not think it could be said that such a contract is prohibited or invalid under the valued policy statute. The fact that the claiming endorsement clause does not immediately follow in the same sentence the $2500 provision or value first named in the policy is not material since after all it is a part of the contract fixing the amount of liability which the contracting parties freely entered into. No fraud is charged or relied on by appellant and he does not claim that he did not understand the contract, but seeks to avoid a plain provision thereof upon the sole ground that it is not binding under the valued policy law. It is our conclusion, therefore, that the claiming endorsement does not offend the valued policy statute and the trial court committed no error in overruling appellant's motion for a directed verdict in his favor, and properly submitted the case to the jury for its finding of fact under the issues involved.

Finding no error of law, and the evidence being sufficient to sustain the verdict of the jury, the judgment is affirmed.